M. C. BULLOCK MANUFACTURING CO. *v.* SUNDAY LAKE IRON MINING CO.[1]

1. REPEAL OF STATUTES—CORPORATIONS—LIENS.
   Section 5472, 2 Comp. Laws, is not repealed by section 44 of Act No. 113, Pub. Acts 1877.

2. SAME—TITLE OF ACT.
   The title to an act (Act No. 113, Pub. Acts 1877), limiting it to the revision of the laws providing for the incorporation of certain companies, does not authorize the repeal of a section of an act (2 Comp. Laws, § 5472) authorizing corporations of other States to engage in business in this State.

3. SAME—CONSTRUCTION OF STATUTE.
   A clause in an act relating exclusively to domestic corporations, purporting to repeal, "so far as they relate to" such corporations, certain specified acts, among them one referring solely to foreign corporations, cannot be said to effect a repeal of the last-mentioned act.

4. LIENS—PURCHASE OF PROPERTY—MERGER.
   Where one of the holders of two concurrent liens purchases the property subject to the liens, his own lien is not merged in the title thus purchased.

5. SAME—ACCOUNTING.
   Where a judgment creditor, who is also the holder of a lien on the debtor's property, causes a portion of the property, upon which there is a concurrent lien, to be sold on execution, and applies the proceeds upon the judgment, upon an accounting between the lienholders the proceeds of such sale should be deducted from his *pro rata* share under the lien.

[1]Rehearing denied May 29, 1903.

Appeal from Gogebic; Haire, J.   Submitted December 3, 1902.   (Docket No. 138.)   Decided February 17, 1903.

Bill by the M. C. Bullock Manufacturing Company against the Sunday Lake Iron Mining Company, James Corrigan, Stevenson Burke, and Price McKinney to determine the priority of certain liens. From a decree for defendants, complainant appeals.   Reversed.

*Ball & Ball*, for complainant.

*C. E. Miller* ( *A. L. Flewelling*, of counsel ), for defendants.

MONTGOMERY, J.   In 1893 the Sunday Lake & Gogebic Company, a corporation organized and existing under the laws of the State of Wisconsin, became indebted to complainant in the sum of $9,784.36 for the purchase price of a hoisting plant and its appurtenances furnished to the company by complainant.   This hoisting plant was erected on land in the county of Gogebic of which the mining company was a lessee.   At the same time the company was indebted for labor to sundry parties in an amount aggregating some $26,419.67, which was represented by drafts indorsed to and which were apparently the property of Price McKinney.   Numerous levies had been made upon the property of the corporation.   On the 3d day of August, 1893, the complainant filed a bill in the circuit court of Gogebic county, in chancery, to have a lien declared in its favor, and for the enforcement of such lien.   The corporation and attaching creditors were made parties.   Decree was entered on the 8th of March, 1894, declaring a lien in favor of complainant in the sum of $10,278.86, besides costs of $285.30.   This lien, by the decree, attached to the hoisting plant and to the title and interest of the mining company in the land of which it was lessee.   After the decree was entered, there was intervention by injunction to prevent the execution of the same by the defendant Price McKinney, and it was agreed that no

steps should be taken to enforce the same without notice to McKinney's attorney, and no steps were in fact taken for a considerable period.

On the 15th of August, 1893, suit had been commenced against the mining company by Corrigan, Ives, and Burke, and on the 4th of November a judgment was rendered in their favor in a sum for more than $190,000. On the 15th of February, 1894, a sale of the land and personal property belonging to the mining company was made, and Price McKinney became the purchaser. This sale was made in different parcels: *First*, $8,000 was paid for the personal property, consisting of two stockpiles of ore and other personal property. The ore piles were sold to Price McKinney, subject to the lien of Price McKinney for royalty and labor claims, and the other personal property was sold subject to the lien of complainant, and a lien claimed by Price McKinney for labor. The proceeds of this sale, the $8,000, were paid to Price McKinney in part, as assignee of judgments secured against the company. On the same day that the sale was had, an action was brought by Price McKinney to recover on the labor claims held by him, which proceeded to judgment on the 25th of May, 1894, when a recovery for the amount of the labor claims was had, and it was adjudged that McKinney had a lien upon all the real and personal property of the defendant in the Upper Peninsula for said sum.

The present bill is filed setting forth these facts, and, in addition, alleging that the leasehold interest of which Price McKinney became the purchaser became the property of Corrigan, McKinney, and Burke, through the agency of the Sunday Lake Iron Mining Company, of which they held substantially all the stock, and that they thereafter caused the Sunday Lake Iron Mining Company to relinquish its lease, thereby depriving the complainant of all the property upon which it could enforce its lien, with the exception of the hoisting plant; that the hoisting plant is still in possession of the Sunday Lake Iron Mining Company, the new corporation created by the defendants.

The circuit judge decreed that the complainant had a lien under the statute providing for a mechanic's lien, that the defendant Price McKinney acquired by his judgment a lien under section 10755 of the Compiled Laws of 1897, and that this lien had priority over that of complainant, and decreed that, before complainant could proceed to enforce its lien, it should pay or tender to defendant the amount of this prior lien.   Complainant appeals.

The contention of complainant is that it is entitled to a lien under section 5472 of the Compiled Laws, which provides that "Every person who shall perform any labor or furnish any material for such corporation  *  *  *  shall have a first lien for the amount due thereon,  *  *  * which lien shall take precedence of all debts, judgments or decrees, liens or mortgages against such corporation, except liens accruing to this State for taxes, fines, or penalties," and that this lien is concurrent with the lien of defendant Price McKinney, acquired under section 10755, 3 Comp. Laws, which lien, it is conceded, is substantially of the same character.   The circuit judge held, in accordance with defendants' contention, that section 5472 of the Compiled Laws had, as it affects the corporation in question, been repealed, and this presents the first question for our consideration.

The statute which it is claimed repeals section 5472 is Act No. 113 of the Public Acts of 1877.   This act is entitled:

"An act to revise the laws providing for the incorporation of companies for mining, smelting, and manufacturing iron, copper, silver, mineral coal, and other ores or minerals, and to fix the duties and liabilities of such corporations."

The act proceeds to provide for the incorporation of domestic corporations, and section 44 is the repealing section.   This section begins as follows: "The following entitled acts, so far as they relate to corporations authorized by this act, are hereby repealed."   This is followed by an enumeration of a large number of acts, including

specifically an act to authorize corporations of other States to engage in the mining and smelting of ores or minerals in this State, of which section 5472 is a part. We think it cannot be said that the act of 1877 repeals section 5472. In the first place, the repeal of that section is not within the title of that act. The title limits the purpose of the act to the revision of the laws providing for the incorporation of companies, and does not relate to the authority given by statute to corporations of other States to engage in mining in this State. More than this, the language of the repeal is limited to the acts enumerated so far as they relate to corporations authorized by the repealing act. Foreign corporations were not authorized by the repealing act, and we think it must be held that the intent of the legislature is too obscure to justify an inference of a direct repeal. It follows from this that the liens of complainant and defendant Price McKinney were concurrent or simultaneous liens.

It is next contended by complainant that the effect of the purchase of this property by Price McKinney, subject to the liens of himself and complainant, was to merge the McKinney lien in the title thus purchased. It is conceded by complainant that the equity rule would, if there had been an intervening equity in favor of defendant and between complainant and the title acquired, prevent a merger. We think the rule should be the same where there is a remedy concurrent with complainant's, and where it is evidently for the benefit of the defendant that no merger be presumed. See 2 Pom. Eq. Jur. § 798.

What, then, are the rights of the parties? It is manifest that the decree below, as it proceeded upon the theory that the defendant's lien was a prior one, cannot be sustained. The proper decree should be based upon the theory that these liens were concurrent, and we think it will be necessary to remand the case for the purpose of ascertaining more definitely the rights of the parties. A sale of the property covered by these liens will be ordered, and the amount realized should be applied upon the respec-

tive liens represented by the judgment of Price McKinney and the decree of complainant. But as it appears that, out of the proceeds of the sale of the personal property, Price McKinney, as the alleged assignee of judgments recovered against the company, received $3,952.75, which he applied upon such judgments, and which sum should have been applied upon his prior lien for labor claims, this amount should be deducted from the *pro rata* share coming to him upon the accounting. Upon such accounting it should also be ascertained and determined whether anything of value passed to Price McKinney's assignees upon the surrender of the leasehold interest. Should it be ascertained that they did receive any sum upon such surrender, then, as the two liens of complainant and McKinney should first have been satisfied out of the proceeds of such surrender, the amount so received will be charged against the defendant in the accounting. The complainant will recover costs of both courts.

The other Justices concurred.